Good morning. My name is Greg Silvey. I'm an attorney from Boise, Idaho, and I represent Mr. Enno. I'd like to start where the State left off in their brief, which is to suggest to this Court not to consider the death qualification issue because Mr. Enno did not ask for it in the COA. And I don't have a diagram for you, but I'll try to verbally flowchart it out and flesh it out a little bit to explain my... Who diagrams everything, almost everything? Steve Trott. Yes, our most famous son of Idaho judge. He's the son of Los Angeles. Well, we've adopted him. He had his first trial before me when I was a municipal court judge, 65. Can you share something with me that I can throw up in his face at this point next time I need to in an oral argument? I'll try speaking to him in French. That's not going to help me. So for Mr. Enno, basically what happened here is I think he has been a – he did not ask for the death qualification issue in the COA, but I think he was led down the garden path by the State in this case, not this particular case. Well, you have to back up. He didn't even argue that in the district court, did he? No, he did argue – well, he raised it in his petition. And in what – then what happened is the State, this attorney's predecessor, so I'm not blaming her personally, they – in their motion for summary dismissal, they brief it and there's a big heading saying every single claim is procedurally defaulted because nothing is exhausted. It goes on, and this claim is clearly exhausted in the Idaho Supreme Court. You know, it's keyed up and they squarely address it in the published decision. So – but despite that, this big heading in the brief says it had not been exhausted. And – but does not go on to argue that it wasn't, just kind of ignores that claim, never speaks of it again. So then Mr. Enno, who, you know, I have to remember he was barely 18 when he committed this offense 20 years ago, he's requested counsel three times in the federal district court and it's turned down. There are no law libraries in Idaho prisons. So he produces this document that says he has to withdraw these claims and wants to add this claim. And the federal district court, to its credit, did not allow him to do that.   And the federal district court, as I said, he is unrepresented. The court is looking at this itself and isn't allowing him to withdraw an amend, but instead addresses the issues that he has raised. So your position is that the claim was not withdrawn? Correct. Despite the request to withdraw it? Yes, it was – he requested it. The district – the federal district court did not allow him to withdraw it. And it was, in fact, considered by the federal district court and denied, of course, but it was addressed on the merits. And so then – so by that point, Mr. Eno is just – he's just responding to what would be – what he's calling his eighth claim, the IAC claim with the plea bargain. And then so for his certificate of appealability, his request, he just asks for it on that claim. The district court denies it. He has filed a notice of appeal, and this Court reviews the record and produces the COA on the three issues. So I believe this Court clearly can do that. It – the claim was addressed – it was raised, it was addressed, so here we are. So I would say – All right. When you say three issues, what are the two other issues? The other two issues are whether Mr. Eno received ineffective assistance of counsel when a plea offer was not extended to him. And the third issue is whether he was deprived of his due process when the state district court in the post-conviction action did not accept the party's stipulation that he be resentenced. All right. Now, let me ask you about that claim. You think you can raise a claim about some error in the PCR proceeding on a habeas that's supposed to attack the conviction? Well – Trace that for me, if you think you can do it. I guess what I will say is I always hate to stand up here and confess judgments, but I didn't pick the issue. The – you know, the COA came to me and I briefed it as well as I could, but I will concede there are some issues with that particular issue, not the least of which, which Ms. Lorello will point out to you, was not exhausted in the state court either. But in terms of the – regardless of the procedural machinations of it, it's a very interesting issue of when the parties – you know, the parties have agreed he should be resentenced, it doesn't bind the district court to do anything because the district court can still give him whatever sentence he wants, that that judge wants to, and then he turns down the stipulation. So it at least is interesting, if not perhaps the strongest issue that I present to you here today, which I believe is the death qualification issue. And, you know, Idaho is one of the few states that are – well, at the time, the judge sentenced, the jury did not in a capital case, and there was just absolutely no reason for the jury to know it was a capital case. And, I mean, I briefed it extensively, but we just have a situation of, well, you might be able to death qualify a jury when the jury has something to do with sentencing. Here they didn't. So the state's just allowed to gratuitously tell the jury this is a death case and then death qualify them and then remove for cause jurors from the jury. And it's just – and so when the Idaho Supreme Court says that's all fine and well and good, they're utilizing United States Supreme Court cases, which deal with juries that actually sentence or are under advisory or such. But that's not the question. The question is the opposite. That is whether U.S. Supreme Court cases would make the Idaho Supreme Court determination. Right. Only wrong. Yes. And I have an answer for that. I understand that I was maybe not as articulate as I would have liked to have been in explaining my concept. But the basic concept is you don't get to kick jurors off juries for their positions on the death penalty unless there's some good reason to. So basically, we – you don't get to kick – you don't get to – or whatever. The United States Supreme Court has explained the situations in which you can death qualify a jury. If those situations do not apply, you don't death qualify jurors. So, I mean, it's a six-to-14. But as I said, that's the flipping inquiry at this point. The inquiry is whether what the Idaho Supreme Court did was clearly contrary to established Federal laws determined by the U.S. Supreme Court. So I would phrase it as the – not the contrary, but the unreasonable application, because it applies the death qualification cases to a – to a context it does not belong in. Okay. Then that's TIG board. But the law always was that you don't – this goes back to my horribly stated general principle, which is you don't kick people off the jury for cause unless there's a good reason to kick them off for cause. I mean, let's give this situation. We have a misdemeanor driving while intoxicated case. Would the – without the Supreme Court ever having decided the case, can the – can you death qualify that jury? And the answer would be no, because the underlying Sixth and Fourteenth Amendment jurisprudence says you have the right to an impartial and fair jury and its representative. That's the underlying jurisprudence, which then the Witherspoon, Witt, Adams, McCree line of cases then did things with that underlying bit of jurisprudence. So our foundation is you don't – you don't kick people off juries without good cause, and then these later Supreme Court cases decided what is that good cause, how are we going to do it. So that is where I'm trying to explain. That's the principle that existed then the Idaho Supreme Court by applying, say, McCree to it and saying, oh, you can death qualify juries. That is applying that law to a context it does not apply to. So that's as – that's as – Well, you're really saying, I think, that your client didn't get a fair trial because perhaps kinder people were picked off the jury. Exactly. Exactly. So with that, that's the best that I can explain my – my concept. I would like to reserve the rest of my time. If there's no other questions. Thank you. Good morning. May it please the Court. My name is Jessica Laurello. I'm a Deputy Attorney General with the Idaho Attorney General's Office representing the respondents in this case. As counsel noted, there are three issues that were granted – that the Court granted the Certificate of Appealability on, and I will start with the one he addressed first, which is the claim in relation to excusing the jurors and the State's position that the COA was improvidently granted on that. And counsel indicated in his argument today that part of the reason that Mr. Eno withdrew that claim from his petition was that he was led down the primrose path by the State based on a heading that suggested the claim was procedurally defaulted. I said repeat that last sentence. I missed part of it. He – counsel has suggested that Mr. Eno was led down the primrose path in choosing to withdraw that claim from his petition by the State's brief requesting summary dismissal, characterizing that claim as procedurally defaulted. But the State would point out to the extent that is true, Mr. Eno did still get the benefit of consideration of that claim by the District Court. And then even after that, in his – after the District Court denied his request for a Certificate of Appealability on that claim, he did file a request with the Ninth Circuit, which was actually a brief, unlike what he filed with the District Court, which was just a notice of appeal. The brief he filed with the District Court specifically asked for just consideration of one issue or to the extent that related the two issues that have been separated, the ineffective assistance of counsel claim and the stipulation issue. So the State's position is that he – Excuse me. At that point, was he still acting pro se or did he have a lawyer? He was still acting pro se at that point, Your Honor, but – At that point, there are no law libraries in Idaho presence, right? Your Honor, I – there's – I think they can get access to legal materials. It's changed, so I can't tell you what – I definitely can't tell you what the situation was at the time that he requested that. It's my understanding they can request access to certain legal materials. Well, but they have to do that through a lawyer who's paid for – who works for the prison. I don't think so, Your Honor. I think there is a resource center that they can request materials through. I don't know if that's been done away with. I know it existed at one time. It was my understanding it still does, and counsel can correct me if he knows differently. But I'm just not – I can't say for certain. I know I was there, oh, maybe 15 years ago. I handled some district court matters when there was a big trial going on and all the judges were engaged. And that's – and I had a case involving abandonment of prison law libraries for one to save money. And they were going to bring in a paralegal or someone that was employed by the state to do that. But there were no – even then there were no law libraries. I think it's true that the law library doesn't exist per se, but I – it's my understanding that there is a resource center. Mr. Lowell, getting back to your statement that, let's see, after the district court denied his COA, then Enno made an application to the Court of Appeals, right? And you're saying in that application or that motion, whatever it was, he only asked for a COA on one issue? Is that what you're saying? That's correct, Your Honor. And what issue was that? It was the issue of the ineffective assistance of counsel in relation to the plea agreement. And as a component of that, the stipulation that was not accepted is sort of the factual basis of that, and it's sort of become two claims. In his actual petition, it's just a single claim of ineffective assistance of counsel, but it has sort of morphed into two claims at this point. And did you file an opposition to that motion? I mean, for the COA in this court, do you recall? No, we did not file an opposition in this court to his request. But, again, his request was only on that one issue, not the one that we're saying was impermanently granted. Even if this court determines that the COA was not impermanently granted on that issue, it is the State's position, of course, that the Idaho Supreme Court's resolution of that was not contrary to or an unreasonable application of Witherspoon, Witt, Adams, Lockhart, any of the cases that sort of clarified the holding in Witherspoon. And that is because all of those cases make clear that a juror can be excused for a cause if their opinions on the death penalty would preclude them from fairly ascertaining even guilt. And even Witherspoon says that to be true. Well, the jurors told that they will not be involved in the penalty phase or determining what the penalty is. Do they know that? Are they told you're just here to determine whether or not this person committed a crime and all the rest of it? But you have nothing to do with the sentencing. They were in this case, Your Honor. And, in fact, the trial court went to great lengths to try and make that clear, to make sure that they understood that they were not going to be responsible for imposing the death penalty. Were they also told, I think this is correct, at the time of jury selection, the defendant was still exposed to the death penalty, right? That's correct. Now, were they made aware of that fact, that if the defendant was found guilty, he could possibly be exposed to the death penalty? Yes. Yes, Your Honor. The juror knew that? Yes. They were, yes. They were informed of that. Do you have a reference to the transcript on that question? I know it's states lodging A-6. I don't know the reference in the excerpts of record, other than there is an appendix to Mr. Eno's brief on appeal to the Idaho Supreme Court, which excerpts a large portion of the voir dire that includes that discussion. And then I think it's states lodging A-6 that contains the voir dire. But the district court did. And it's also excerpted in the Idaho Supreme Court's opinion, the lengthy discussion that the court had with the veneer about that it was on the table as a possibility and making clear that it was not their obligation, but just trying to ascertain whether the possibility would affect their ability to judge his guilt. And all of the jurors that were excluded clearly said that they could not convict him of a crime. Despite the evidence presented, they could not convict him of a crime that would carry the possibility of a death felony. And that is why they were excused from the jury. In relation to the other two issues on which the court. The ineffective assistance of counsel. Was there a hearing on that? There was actually three hearings, Your Honor. And it was actually quite a prolonged post-conviction proceeding and not entirely clear why. It seems that it may be because the court was awaiting some Idaho Supreme Court decisions on some issues that may have affected the adjudication of that case. But there was a hearing at which there was actually two hearings at which Mr. Eno testified. And then there was a third hearing at which Mr. Zollinger, who was Mr. Eno's trial counsel, testified. And Mr. Eno's testimony was, of course, that the plea offer was not communicated to him. Trial counsel's testimony was clearly that it was communicated and that it was rejected by Mr. Eno. And the trial court sitting in post-conviction found trial counsel's testimony on that point to be more credible and therefore concluded that the offer was, in fact, communicated and rejected. And the Idaho Court of Appeals affirmed that determination is being supported by the evidence. And it is, of course, for that reason that it's the State's position that that determination was not contrary to or an unreasonable application of Strickland. The final issue on which a certificate was granted was whether the State court denied Mr. Eno his due process rights in declining to accept the party's stipulation, which, frankly, wasn't much of a stipulation, anything other than a remedy without any agreement as to the underlying facts. The problem with that, of course, was that it was contrary to the evidence that had already been presented to the Court in relation to what had occurred in the plea agreement. But on the whole issue being presented to the district court in habeas, it's the State's position that that issue was procedurally defaulted because it was not pursued in the State court as a due process claim or a constitutional violation of any sort. It was pursued solely as a violation of the State law. Now, the district court did end up saying, even under due process, you're not denied any relief, but it was never presented to the Idaho appellate courts as a due process claim. And for that reason, it's the State's position that that claim is procedurally defaulted. It is also the State's position as submitted in the briefing that even if it is not the court's decision, the Idaho court of appeals decision, that it was not problematic for the district court or for the trial court to reject that stipulation was not contrary to or an unreasonable application of any Supreme Court precedent because there is no Supreme Court precedent that State's due process requires a court sitting in postconviction to accept a stipulation of a party. Unless there are any additional questions. Thank you. The State asks the Court to dismiss Mr. Reno's petition. Thank you. Any rebuttal? Just a few comments. First of all, I will guarantee to the Court that Idaho prisons don't have law libraries. They have, in the Resource Center, there's a prison packet with information. Ironically, we discovered a few years ago that the statute of limitations information for 2254s was incorrect and explained to the prisoners that they had a year after they exhausted to file their 2254. Do they have access to Lexis? No. Oh, no. No. Yeah, I tell you, my Federal clients, Federal prison, they have better resources than I do in State court. There's just simply nothing. We try to point them to the Federal District Court has produced a pro se handbook to try to help them out a little bit and have straightened out the statute of limitations issue. They also, and in terms of the paralegals, there are paralegals who then say they can't give legal advice. I do understand, and Idaho, you know, has more than one facility and they do things slightly different and there is a private prison that does things even more different. And I do understand at times there are attorneys that the State pays and quite frankly, I don't know, you know. Not any of which is before us on this appeal. Right. So I guess I was just trying to address the questions about the resources Mr. Eno had when he was doing this. And, I mean, I go back to what the State in this brief argues. It's, you know, he has presented no claim. They are all procedurally defaulted. In his next plating he says, as the State correctly points out, they are all procedurally defaulted and not exhausted. I mean, he bit that's what happened, but I just cannot see any reason. I guess it would be in fairness that this Court not consider the issue since it is teed up. And then my last comment, and it just kind of goes back to I don't, this is one of those cases when you look at something that happened 20 years ago and just don't get it. Don't understand why we're even here. Why in this case where the jury doesn't sentence, were they not told the jury is not to concern itself with punishment, like in every other trial that there is? I mean, it's just a stock jury instruction. So it's the setting, it's the why did they tell him that the death penalty is on the table to then be able to death qualify him. There is just simply, I mean, I wasn't trying capital cases in Idaho 20 years ago, and I just simply don't understand why this even happened. I cannot think of any possible reason why the jury should have known this. So it's not a matter of whether these four jurors were correctly booted once they were asked the questions and said, no, I can't do my job if they're going to kill him. It's the you don't get to, you know, to, you don't get to ask the question to begin with, which then allows that thing to happen. So I don't know why it happened, but here we are 20 years later, I guess, still dealing with the aftermath.  Thank you. Now we come to the United States versus best winner.
judges: Pregerson, Rymer, Tashima